Perfect, thank you, Runner. And good morning. I am Shea Murphy. I'm here on behalf of Dependents and Appellants, Winstar Properties in Manhattan Manor. I'd like to reserve five minutes, but I'm assuming it's my responsibility on the clock. That's right. I'll try to help you. I'll try to help you. Okay, perfect. Thank you. So, it's usually about now in these cases that come on me the clearest and simplest distillation of the issue. And it's unfortunate that it's always at the end when you're preparing for argument and not the beginning when you're first looking at the case, but such is the manner of this work. And it occurred to me that the core animating issue here is the question, what is a reservation of rights? And that's sort of meant in a legal sense. What legally is a reservation of rights and what is its significance? How do you do one? What does it do? So, I started poking around and I found a case that's actually cited in the briefs, but I didn't quote this language from it in my briefing. From the California Supreme Court, it's bus versus superior court. I can provide a site if the court is interested. But in a footnote, which is always where the best law lives, the court explains what a reservation of rights is. And it's doing it in connection with a right of reimbursement, which is the core of this case. This case is about reimbursement under an insurance policy for a defense that was provided by Evanston. And then the court explains, and I want to quote this because I The insurer gives the insured notice of how it will or at least may proceed and thereby provides the insured an opportunity to take any steps that it may deem reasonable or necessary in response. Including, and this is important, whether to accept defense at the insurer's hands and under the insurer's control, i.e. subject to the reservation of rights, or instead to defend itself if it so chooses. And the idea here is that the reservation of rights is connected to a right of reimbursement in that the right of reimbursement arises from a reservation of rights. If you don't reserve your rights, you can't get reimbursement. And so it's not surprising that where you fail to reserve your rights, there is a kind of legally punitive component to it. You waive or are stopped from asserting the reservation of rights later as a basis for your reimbursement. But wait a minute, aren't those two different steps? I understand your argument to be on the first question about whether there was successful reservation of rights. I think your argument is that the district court tripped up because the district court decided that reservation could be unilateral, a unilateral decision by the insurance company, but that doesn't mean the insurance company can get away with out giving notice to the insured. And I read that to be your argument about whether or not the reservation was adequate. And it seems to me estoppel is a different question. Well, so estoppel, and there's a relationship there. I mean, I want to be clear. I think the first issue that the court points out is that there is no, you can't use waiver or estoppel in the context of insurance, which is. No, I'm not. That's not what I'm talking about. And maybe I'm confusing things, but could we just break it down? I think you're arguing that they didn't successfully reserve their rights. And the reason the insurance company didn't successfully reserve the rights is because although they're allowed to make the decision unilaterally, they have to provide notice to the insured. Did I misunderstand that part of your argument? No, that's correct. Factually, there are tribal issues, whether or not there was actual notice of a reservation of rights that was given. And I think there's also some question about whether or not the reservation of rights was adequate. Are you disputing that the policy here covers the discrimination that occurs entirely within the policy period? Are you conceding that this discrimination would have occurred outside the policy period? Well, so there's two, and I want to be clear, there's two issues here. One is the duty to defend, which is much more open-ended than the duty to indemnify, which is whether or not we can actually receive coverage for whatever judgment we get against us. With respect to the coverage component as found by the jurors, there's no duty to indemnify. But our position is that there was a duty to defend. It wasn't clear at the outset that there wasn't a claim that could be subject to the insurance policy. Do you dispute the notice that was given in February, or do you just dispute the notice that was given in, I think it was July? We definitely dispute the notice that was given in July. I think in February there was notice that was given, they did reserve their rights, and it was clear at that point that a reservation of rights in some form or another had been made. Clear at what point? Sorry, clear at what point? I don't know exactly when the February 16th letter was received, but it was about that time. There's a responsive email. There was an email that was sent, I believe, on the 18th, which is a Sunday. My client responded to the email and began to ask, what does this mean? From a technical standpoint, did Evanston state we reserve our rights? There was some baseline satisfaction of that requirement. Counsel, in February, Chief Slim was asking you about July, and I think you may have misspoken because I think you said two things. My understanding is you dispute receipt of the July 20th, 2017 letter, is that right? That is correct. We dispute receiving that. If the letter was mailed, is that an adequate reservation of rights in July of 2017? I don't think that if it was, that's an evidentiary issue. If it was mailed, and they conclusively established that it was mailed, I guess it gives rise to a presumption, a rebuttable presumption, that that was a communication that was made. But our position is that there are tribal issues of fact, whether or not it actually made it into the mail, and then there are also tribal issues of fact, assuming that it did, or at least the records indicate that it was, that it actually made it to my client. My question is, if it was mailed, we'll talk about the issue of receipt and presumptions later, but if it was mailed, is it an adequate reservation of rights? Is the letter a reservation of rights? Oh, I see. I apologize. No, I don't believe it was. The letter was issued before Evanston actually gave a defense, or elected to provide a defense, and accepted coverage under the policy. It was almost two months before it did that. So it sends a letter that by its own terms says, the letter says, in the verbiage of the letter, I think I have it right here, this letter does not address the availability, if any, of insurance coverage or benefits under the above-referenced policy or any other policy. That's what the letter says. So my client receives this, assuming that it was mailed and this was received in their mailbox, any reservation of rights at this point isn't connected to the provision of a defense. So it's sort of an open-ended reservation of rights that attaches to a letter that doesn't apply to or relate to any coverage under a policy. So our position is that it's not an adequate reservation of rights as it is being discussed. Was there a reservation of rights? Our position is there was no reservation of rights in July. It was neither adequate nor was it actually timely. It wasn't sent to us. There was a mention of the July reservation of rights in February, but we didn't receive that until February. And by that time, by the time of February, communication reservation of rights was made, it was too late. There had been a reliance on, to the detriment of my client, the coverage that was being provided them and specifically in connection with the settlement negotiations that were going on in preparations for trial. At that point, I think it was like seven or eight days before trial was set to begin, my client would have had to retain new counsel and get them up to speed so that they could appear in court and represent them in a trial and then also try and make settlement negotiations. And there was just no way that that could possibly happen. And that's the point of reservation of rights is to afford the insured the opportunity to either proceed with coverage provided by or defense provided by the insurance company or to retain their own counsel and proceed on their own. And here, with eight days to spare, there's just no time, especially given the reliance that had gone up to this point. I don't understand your reliance. For me, I'm just going to tell you, this is the sticking point for me. I don't understand your reliance argument. Your client was being represented by a different carrier who had arranged representation. Is that right? So originally, another carrier had arranged representation. At some point, Evanstein comes on board and they say, we're going to use the same counsel. We have an existing relationship with, is it Manning Cass? I can't remember the name of the firm off the top of my head, but we have an existing relationship with them. We use them in our matters and we will just coordinate with them from here on out. And at that point, Lisa Unger essentially took control of the litigation, as it were. I mean, the counsel, the firm that was representing them, continued to but the bill was being paid in part by Evanstein. The other issue here is... Wait, wait, wait. Excuse me. Okay. And then what happened eight days before, you know, when Evanstein finally said, hey, wait a minute, there isn't coverage, or took the position, there isn't coverage after all. What did they do? What changed? So at that point, they notified my client that there was no coverage. And what happened to your client's representation? So my client could elect to proceed with representation at that point, or they elect to try and secure their own representation. Counsel, what really happened, not what were the options? What did your client do? We proceeded to trial at that point. With the same representation as I understand it, is that right? Correct. I'm not trying to give you a hard time. I'm trying to figure out what your reliance argument is. How was your client hurt by this, please? So my client wanted to settle the matter. And they were making increasingly emphatic requests to Evanstein to settle the matter. Evanstein was the only insurer that was involved that was going to put money up for a settlement. And it was my client's understanding at this point that this was being done without reservation. They just thought that they had coverage. And so they were asking, hey, can we settle this? And Evanstein even said, hey, we'll do a global settlement for $75,000. They were going to put their own money into the pot. And so there were these increasingly escalating efforts to try and settle the matter. Right? And then the trial date is upon them. It's eight days away. At that point, Evanstein says, you're not covered. Right? And we don't think that you're covered. We're going to reserve our rights. So at this point, the reliance is in not getting counsel beforehand and trying to settle this on their own. They would have settled this for $60,000 out of their own pocket had that been available, had they known that that was what they needed to do. They would have retained another attorney. They would have just settled the matter and put it to bed. But instead, they proceeded with it. Let me ask you this. Should we be reaching this question, this fact-intensive question at this point about reliance? Absolutely not. I think this should go back to trial court for a jury to decide. If we think there's a material issue. If we think there's really... Is that right? Correct. Yeah. Yes. If there is a material issue of fact about reliance, then it should go back and the summary judgment order should be reversed. And that's the idea. Your best shot on the reliance argument is if there was an opportunity to settle that was lost, as I understand it, from this briefing. Is that right? Yes. That is our position. Am I mistaken that this is a bench trial? You know, that's a good question. I don't know off the top of my head. I believe it's declaratory relief. So I would imagine that it was a bench trial, but I don't... I'm not 100% certain. I can find that out. Well, before you come back, check that, because I believe it's a bench trial. So it's not a jury determination that will be made. Correct. Okay. So even if it's not a jury determination, it still would proceed to trial. Because that, you know, at least ostensibly, when the judge is sitting in the summary judgment phase, they're not sitting as a finder of fact. They're sitting as a determiner of law, as it were. And if there are issues that can be resolved as a matter of law. And just really quickly, my last minute, before I lose my time, I do think that there's a waiver here because, or at least there's a tribal issue whether or not there was a waiver because of the extensive amount of information and repeated reviews of the file that was provided to Evanston. And despite all of that information, they continued to represent them. And it's really, what's interesting about this is that the theory that they are not under an obligation of the policy is based on information that they had from the very initial tender of a defense. From the very get-go, when a complaint was provided to them, they had their own policy in front of them. And if that's all it took for them to figure this out, why was it that they couldn't do it then? Or when they received notice later that another insurance carrier had denied coverage, or they reviewed the case on multiple times, on multiple occurrences according to their own notes, and were actually provided another copy of the complaint, that they couldn't make this determination at that point. And I think that creates a tribal issue. There's more than enough evidence here to establish, not just my client's subjective perspective on whether or not they waived it, but on whether or not they had this information in front of them and they decided to forego it anyway. Mr. Murphy, thank you very much. Appreciate it. Mr. McInnis? Thank you, Your Honor. May it please the Court. I'm Terence McInnis on behalf of the Evanston Insurance Company. What the relief that the appellants are seeking here is quite extraordinary. From what I hear, and what is the case, this was a situation where there was no coverage afforded for this claim under the policy. And yet, the appellants now want this Court to find that despite that fact, the policy will now cover this claim because of some waiver or estoppel argument. Are you disputing the fact that if your client did not reserve its rights, that waiver and estoppel could apply even if the policy did not cover the claim? Well, under certain circumstances where an unconditional defense is provided and no reservation of rights is ever issued, courts have estoppel if there is also a showing of courts have said it needs to be an intentional relinquishment of a known right. Okay, but didn't the trial court err in holding that you could not possibly get to waiver and estoppel because this claim was not covered? No, because the rule only applies if there's an unconditional defense. And as the record on summary judgment showed, this was not an unconditional defense. Well, let's talk about the July letter. How is it an undisputed fact that that July letter was sent to Mr. Murphy's clients? I'd say there's at least two reasons why it's undisputed. First, the only evidence they submit to dispute that fact, I believe it's at the record at 266, is Ms. Teller's declaration in which she says that she did not receive the letter and does not recall reading the letter. But her declaration doesn't say that no one at WinStar received the letter or reviewed the letter. It's simply personal to her. That's the only evidence she has. Well, where's the evidence that the letter was mailed by her client? I've looked through the record. I do not see evidence that the letter was actually mailed. Nobody said that. Well, the notes in our files indicate the letter was mailed. The letter appeared in our file as signed and dated. The notes indicate that it was sent. And there's no indication that it wasn't sent. That's all that's in the record. Counsel, could I ask about this? Because there's other cases where the mailbox rule comes up. And I typically see in the record, you know, we're a long way from the trial court. But I would typically see something to indicate what the routine practice is or what the system is for, you know, within a particular organization for generating correspondence and keeping track of it and whatnot. Maybe it's a log. Maybe it's, you know, who knows what. But I just, I'm trying to figure out if I missed it or do we not have that on our record on appeal at this point? I mean, if it wasn't, if it's not on the record, then it may not be in the record. There was testimony provided in the court that, you know, that it was a routine practice that they would have mailed things that appear in their file and the notes indicated it was mailed. But I think the other point... If we don't have that finding, do we need to remand to get that decided about whether or not your... One question is whether the letter is sufficient. Apparently opposing counsel's arguing that it wasn't sufficient. But setting that aside for a minute, just in terms of giving notice, because I don't think it's disputed your client can't reserve rights unilaterally without giving notice under the appropriate law here. So do we need that finding? No. No. I mean, for two reasons. One, again, it's not necessary for the affirming the case in any event. But number two, in their answer to the complaint, to paragraph 17 of the complaint, Evanston pleads that the acknowledgement was issued on July 20th. And while the answer to the complaint disputes that that was an appropriate reservation of rights, it otherwise admits the rest of that paragraph. So as I read their answer to the complaint, they admitted at least that the acknowledgement letter was issued on July 20th, 2017. They did not... Is this the basis for your argument that we don't need to reach the mailbox rule? That is an additional basis. Correct. Okay. Thank you. I think I interrupted Chief Dutchlin. I didn't mean to. Were you? That's fine. So as to whether or not that was... If it was issued, which it was, whether that was appropriate and sufficient, I clearly think it was. Counsel read part of that letter, but the rest of the letter says, Evanston Insurance Company reserves all rights under the policy of the law and in equity, including the right to disclaim coverage in whole or in part. And so at the very outset of the case, the WinStar was put on notice that there was a reservation of rights in place. And it's not a requirement that every email that a claims adjuster then thereafter sends has to include a reservation of rights in it. So I think it's... And this reservation was never... Pretty a statement to say we're withdrawing our reservation of rights, et cetera. So I think it's adequate. I think that's clear that this was therefore not an unconditional defense. And therefore the court was right in applying the general rule that you cannot have coverage by estoppel or waiver. But if there's any issue about whether or not this letter was issued, it still is appropriate to affirm the judgment in the case because the plaintiff, WinStar, did not come up with sufficient evidence to contest waiver or estoppel. With respect to estoppel... Can I ask you still a little bit about the mailbox rule? Because in your briefing, you referred to the common law mailbox rule to argue that it's clear the July 20th, 2017 letter was mailed. But I believe in California, you have to present some circumstantial evidence, including customary mailing practices to establish this. And from what I was able to gather, I think... Oh, let me ask you, do you present any evidence of customary mailing practices? I don't know that you did. And so I wanted to follow up with you to see if I was mistaken. I don't have in front of me the record on that. It may have been in one of the declarations from the Evanston people. But what it was in the record was the claim notes that indicate it had been sent. The claim notes say acknowledgment letter issued. So that is our evidence that our notes say we mailed it. And is that enough? Typically, you don't normally send it certified? No, this first letter is not typically certified, and the letter did not indicate it was. But I'd like to get to the... Putting that aside, then, even if it wasn't sent out, the law is clear that if a reservation of rights is sent out at some point in time, even if not at the beginning, there's no waiver. The appellants rely on the Miller case quite extensively. But in the Garamendi case, Garamendi versus Golden Eagle, the court summarized the case law on waiver under these sort of circumstances. And the court said, and I quote, in virtually every case discussing the waiver issue after Miller, the courts have found that there was no waiver if the insurer made a reservation of rights at any time, even years after the defense was applicated. That's in the Garamendi case at 721. And so the case law is clear that a carrier is not required to issue a reservation of rights simultaneously with saying that they will agree to defend the case. That California clearly allows carriers to issue a subsequent reservation of rights without the risk of waiver. So what if he can show a stoppal? What if he can show a stoppal, counsel? So a stoppal is, as he said, the only basis for a stoppal, the only alleged detrimental reliance that occurred before the February 16th reservation of rights letter is this allegation that they could have settled the case, or at least not the case, they could have settled with one plaintiff, Ms. Baltazar, for $60,000. And they put in a declaration that said, had we known that there was a reservation of rights, we would have used our own money to settle for $60,000. What they don't submit any evidence to say is that they couldn't have settled for $60,000 a week or 10 days later when they had received our reservation of rights letter. Our reservation of rights letter went out on the 16th of February. We specifically told them in that letter, and that's the record at 734, that WinStar may elect to settle with the plaintiffs at their own expense. We told them, we're not, we're reserving rights. We don't think there's coverage. And you can go ahead and settle with them at your own expense if you want. And that's exactly what the plaintiffs said they were, WinStar said that they were going to do. They said, we were prepared to pay the $60,000 ourselves. They didn't need to retain new counsel to do that. They could have told defense counsel, go ahead and make the $60,000 offer or accept it. There's no evidence at all in the record to create a disputed fact that there was any detriment to this. The only evidence they have is that in April, two months later after the mistrial, the plaintiff's offer had gone up. But in the period of time between February 16th and the trial, which began on February 27th, after they received this letter that said, you can settle at your own expense if you want. There's no evidence that they couldn't have done that, but they chose not to do that. And therefore, there's no detrimental reliance at all. There's no factual dispute over that. There's nothing in the record that shows they couldn't have settled for $60,000 on February 20th rather than on February 2nd. And so without that detrimental reliance, they can't show estoppel. And clearly after that date, there was numerous communications indicating that we were reserving rights and that there was not going to be indemnity coverage afforded. And so they were clearly on notice after that date that there was no, there's no basis for an estoppel after that date. So in the absence of- Excuse me, Mr. McGinn. Should we be reaching that question at all? We conclude that those are issues to be determined. Should remand and trial court determine at least estoppel? No, I don't think, I don't think it's an issue that would require a remand because on summary judgment, the non-moving party here, the insured, has the burden of proof to establish estoppel. And so on summary judgment, they were required in order to avoid summary judgment to put forth evidence of detrimental reliance. And they did not do that. It's not detrimental reliance merely to say we would have settled the case on February 2nd without any evidence that they couldn't have settled the case on February 20th. And there is no evidence of that at all. So without any evidence of detrimental reliance, the summary judgment should be affirmed. There's no reason to remand it for factual determination. Can I ask you, did Evanston refer to the July 20th letter or any other reservation of rights when it actually accepted the tender of the defense? When the email went out that said we'll defend, that email did not mention any letters or reservations. The email in context shows that there was an investigation going on. Ms. Unger was trying to determine when the claim was made and why Winstar waited a year to give us notice and that sort of thing. But there wasn't a specific reference in that email.  Winstar was on notice that the defense was not unconditional because the record shows that there had been discussions with Winstar about the fact that there was no coverage for punitive damages. And that's why Winstar was prepared to and offered to contribute its own money towards a settlement. So that occurred no later than early February because the email record shows that I think at 249 that they knew that Evanston wasn't going to pay all of this claim in any event. And so certainly by that date, there was not an unconditional defense and Winstar would not have wanted to pay their own money if they thought that there was an unconditional defense. I don't understand why, as they say in their declaration, they were prepared to pay money to fund any settlement. So the fact is there is not evidence of estoppel, of detrimental reliance. It was their burden at the summary judgment stage to put on that evidence. Because they did not include any evidence to show detrimental reliance, the summary judgment should be affirmed. With respect to waiver, the case law I think in California is very clear that as long as a reservation of rights is issued during the course of the case, there is no waiver. And there's clearly no evidence of an intentional waiver here, any sort of statement that we hereby waive our retroactive paid defense. Nothing at all like that. So whether or not the court finds that it's undisputed on the record that the July 20 initial reservation of rights was issued, there's no evidence otherwise to support waiver or estoppel on the record submitted to the district court. Therefore, for that reason alone, the judgment should be affirmed. But again, I do think given their answer to the complaint where they admit that the acknowledgment was issued on July 20, and given that the only evidence they have disputing receipt of that is that one witness, Ms. Teller, said that she never received it. She is not WinStar. There are other people at WinStar. And so without that sufficient evidence, I think there's adequate evidence on the record to affirm the district court as well on the basis that this was not an unconditional defense because of the initial reservation of rights. Thank you very much, Mr. McGinnis. Mr. Murphy, you're out of time, but I'll give you two minutes for rebuttal. Thank you very much. I'd like to direct the court to volume three of the experts for record, page 298. There is an entry from what appears to be the case log for Evanston for this particular case. And there's two entries on there. One is from July 20 when they contend that they sent this letter. And on that page, it says, send acknowledgment letter to ensure to producer, which based on the conjugation of the verb, it implies that it hasn't been done yet. Or not, it just doesn't imply it. It states that it hasn't been done yet. Counsel, can you help me out? I'm looking at July 18th on that page and then July 20th. Where does it say supervisory notes? Am I looking in the right place? Yes, that's exactly right. So if you look, you'll see there's an entry. This is September 11, 2017. Directly above that, it says send ACK letter to insured. I see. Oh, I see. It's in a different. And then interestingly, if you go down to September 11th at the very bottom of that one, it says acknowledgment letter sent to insured. So they know how to use the word sent or send, as the case may be, to mean what it means. But the issue here is that they're contending that they sent this on July 20th. But according to their notes, it was sent on maybe, assuming this is the same acknowledgement letter that they're referring to, they sent it on September 11th, possibly. And it's just not clear. I mean, this is.
judges: Murguia, Christen, Lynn